**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| OLER ADAMS JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-10-920-F |
| | ) | |
| DAVID SUTMILLER et al., | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff, Mr. Oler Adams Jr., a state prisoner appearing pro se, brings this action under 42 U.S.C. § 1983 alleging several violations of his constitutional rights. United States District Judge Stephen P. Friot has referred this matter to the undersigned Magistrate Judge for initial proceedings pursuant to 28 U.S.C. § 636(b)(1)(B).

Defendants Don Sutmiller and Barbara Carswell (the "Medical Staff Defendants") have moved for summary judgment on Plaintiff's remaining claims, as have Defendants Emma Watts, Rickey Moham, and DeWayne Howell (the "JBCC Defendants"). *See* Doc. No. 172 ("Med. Staff Defs.' Mot."); Doc. No. 173 ("JBCC Defs.' Mot."). Defendants additionally have filed a Special Report ("S.R.," Doc. No. 21) in accordance with this Court's order and *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978). Plaintiff has responded to both Motions and also filed a series of documents that the undersigned construes collectively as a single motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* Doc. No. 174 ("Pl.'s Resp. to Med. Staff

Defs.' Mot."); Doc. No. 177 ("Pl.'s Resp. to JBCC Defs.' Mot."); Doc. Nos. 175, 176, 178, 179 (collectively, "Plaintiff's Rule 12(c) Motion").

Defendants' motions for summary judgment and Plaintiff's motion for judgment on the pleadings are fully briefed and ready for decision. Having considered the arguments, pleadings, and – where appropriate – evidentiary materials submitted by the parties, the undersigned recommends that summary judgment be granted in favor of Defendants on all of Plaintiff's claims, and that Plaintiff's Rule 12(c) Motion be denied.

PLAINTIFF'S CLAIMS

Following several iterations of Plaintiff's complaint and disposition of Defendants' various motions to dismiss,[1] constitutional claims against five Defendants remain for disposition.[2] The controlling pleadings are Plaintiff's Amended Complaint (Doc. No. 50) and Defendants' Answer (Doc. No. 164). First, Plaintiff alleges that his right to adequate medical treatment under the Eighth Amendment of the United States Constitution was violated. Am. Compl. at 2, 4-6.[3] Second, Plaintiff alleges that he suffered various violations of his Fourteenth Amendment due process rights.[4] Id. at 2, 5-

---

[1] On May 3, 2012, the Court adopted two Reports and Recommendations by former Magistrate Judge Bacharach that narrowed Plaintiff's claims. See Doc. Nos. 115, 116. On March 21, 2013, the Court adopted a Report and Recommendation by Magistrate Judge Erwin that further narrowed Plaintiff's claims. See Doc. No. 162.

[2] All Defendants are being sued in their individual rather than official capacities. See Am. Compl., Doc. No. 50, at 4.

[3] References to filings use the ECF pagination.

[4] Plaintiff also cites the Fifth Amendment in connection with his due process claim. As a state prisoner, however, his due process challenges implicate his rights under the Fourteenth Amendment, not the Fifth Amendment. See, e.g., Parnisi v. Colo. State Hosp., No. 92-1368, 1993 WL 118860, at *1 (10th Cir. Apr. 15, 1993).

6. Certain of Plaintiff's due process claims have been recast as First Amendment retaliation claims. *See* Report and Recommendation of Feb. 19, 2013, Doc. No. 160; Order of Mar. 21, 2013, Doc. No. 162.

Specifically, Plaintiff asserts claims under 42 U.S.C. § 1983 against the following Defendants, asserting violations of the following federal rights:

| | |
|---|---|
| Defendant Sutmiller, Chief Medical Officer ("CMO") at Oklahoma Department of Corrections ("ODOC") | (1) Eighth Amendment violation for denial of adequate medical care; and <br> (2) deprivation of due process for refusal to provide necessary medical care. <br> *See* Am. Compl. at 2, 5-6; Answ. at ¶¶ 3, 10-11, 13; Order of May 3, 2012, Doc. No. 116. |
| Defendant Carswell, Correctional Health Services Administrator ("CHSA") at Jackie Brannon Correctional Facility ("JBCC") | (1) Eighth Amendment violation for denial of adequate medical care. <br> *See* Am. Compl. at 2, 4-6; Answ. at ¶¶ 5, 9-11, 14; Order of Mar. 21, 2013. |
| Defendant Watts, Warden at JBCC | (1) First Amendment violation for retaliatory acts, including the unwarranted transfer of Plaintiff to another facility. <br> *See* Am. Compl. at 2-3, 5-6; Answ. at ¶¶ 4, 17; Order of May 3, 2012. |
| Defendant Moham, Deputy Warden at JBCC | (1) First Amendment violation for retaliatory acts, including the unwarranted transfer of Plaintiff to another facility, misinforming Plaintiff of his ability to grieve/appeal, expressing dislike of Plaintiff, and depriving Plaintiff of his personal property. <br> *See* Am. Compl. at 2-3, 5-6; Answ. at ¶¶ 6, 15; Order of Mar. 21, 2013. |
| Defendant Howell, Unit Manager at JBCC | (1) First Amendment violation for retaliatory acts, including the unwarranted transfer of Plaintiff to another facility, depriving Plaintiff of his personal |

| | property, and facilitating the improper delay of Plaintiff's legal mail. |
| | *See* Am. Compl. at 2, 4-6; Answ. at ¶¶ 7, 16; Order of Mar. 21, 2013. |

## STANDARD OF REVIEW

Summary judgment is a means of testing in advance of trial whether the available evidence would permit a reasonable jury to find in favor of the party asserting a claim. The Court must grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, the Court views the evidence and the inferences drawn from the record in the light most favorable to the non-moving party. *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005). While the Court construes a pro se litigant's pleadings liberally, such a litigant nevertheless is held to the same rules of procedure that are binding on other litigants. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007).

A defendant that moves for summary judgment has the burden of showing that the undisputed material facts require judgment as a matter of law in its favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). To defeat summary judgment, the plaintiff need not convince the Court that it will prevail at trial, but it must cite sufficient evidence admissible at trial to allow a reasonable jury to find in the plaintiff's favor, i.e. to show that there is a question of material fact that must be resolved by the jury. *See Garrison v.*

*Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). Parties may establish the existence or nonexistence of a material disputed fact through:

- citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials" in the record; or

- demonstration "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

Fed. R. Civ. P. 56(c)(1)(A)-(B).

A defendant seeking summary judgment on the basis of an affirmative defense must show that the undisputed material facts establish *all* of the elements of the defense. *See Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997) ("The defendant . . . must demonstrate that no disputed material fact exists regarding the affirmative defense asserted."). If the defendant meets this burden, the burden shifts to the plaintiff to cite evidentiary material that shows there is a genuine factual dispute as to one or more elements of the affirmative defense, absent which summary judgment should be granted in favor of the defendant. *Id.*

ANALYSIS

I. **Whether Defendants Are Entitled to Summary Judgment as a Result of Their Affirmative Defense That Plaintiff Failed to Exhaust Administrative Remedies**

Both the JBCC Defendants and the Medical Staff Defendants assert the affirmative defense that Plaintiff's claims are barred because Plaintiff did not, prior to commencing this lawsuit, exhaust his available administrative remedies as required by the Prison Litigation Reform Act of 1995 ("PLRA"), codified in pertinent part at 42

U.S.C. § 1997e(a). Answ. at 4, ¶ 2. All Defendants seek summary judgment in their favor on the basis of that affirmative defense. *See* Med. Staff Defs.' Mot. at 2, 4-6; JBCC Defs.' Mot. at 2, 4-6.

### A. The PLRA

The PLRA provides that no action under 42 U.S.C. § 1983 may be brought by a prisoner regarding conditions of confinement "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 90, 93-103 (2006) (explaining that Section 1997e(a) requires "proper exhaustion"—i.e., "using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)" (internal quotation marks omitted)). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Ngo*, 548 U.S. at 90-91.

### B. The ODOC Offender Grievance Process

The ODOC has adopted an Offender Grievance Process, OP-090124,[5] through which a prisoner in its custody may seek formal administrative decisions or answers to complaints. *See* ODOC Grievance Process (Med. Staff Defs.' Mot. Ex. 1, Doc. 172-1; JBCC Defs.' Mot. Ex. 1, Doc. 173-1). The ODOC Grievance Process requires an inmate to initially attempt informal resolution of the complaint by speaking to an appropriate

---

[5] All references are to the version of ODOC Grievance Process OP-090124 submitted by Defendants, which took effect May 24, 2011 but now is superseded. Plaintiff relies on a different superseded version of OP-090124 but points to no material distinctions between the versions.

staff member within three days of the relevant incident. *Id.* at ¶ IV(A). If the inmate is dissatisfied after this initial attempt, then he or she may submit a written "Request to Staff" within seven days of the incident. *Id.* at ¶ IV(B). This first informal level may be bypassed only if the complaint involves a sensitive topic or an emergency. *Id.* at ¶ VIII(A).

The next level of the ODOC Grievance Process is the filing of a formal Grievance. If dissatisfied with the response received from a Request to Staff, the inmate may file a Grievance within fifteen days of the incident or the date of the response to the Request to Staff, whichever is later. *Id.* at ¶ V(A)(1). The Grievance is submitted to either the facility's Reviewing Authority or, if medical in nature, the Correctional Health Services Administrator ("CHSA"). *Id.* at ¶ V(B)(1). This level may be bypassed only if the Grievance involves a sensitive topic concerning the Reviewing Authority or CHSA. *Id.* at ¶ VIII(A)(4).

The final level of the ODOC Grievance Process is the filing of a Grievance Appeal. If dissatisfied with the response to a Grievance, the inmate may file a Grievance Appeal within fifteen days of the date of the response. *Id.* at ¶ VII(A), (B). The Grievance Appeal is submitted to the Administrative Review Authority ("ARA") or, if a medical grievance, the Chief Medical Officer ("CMO"). *Id.* at ¶ VII(B). The ruling of the ARA or CMO is final and concludes the administrative remedy procedures available through ODOC. *Id.* at ¶ VII(D).

The ODOC Grievance Process includes mechanisms for prisoners to seek relief if they fail to receive a response from a Request to Staff or a Grievance. If there has been

no response to a Request to Staff within thirty days of its submission, the inmate may file a Grievance with the facility's Reviewing Authority on the ground of non-responsiveness. *Id.* at ¶ IV(B)(7). If there has been no response to a Grievance within thirty days of its submission, the inmate may send a Grievance to the ARA or the CMO on the ground of non-responsiveness. *Id.* at ¶ V(C)(4).

### C. The Sufficiency of Plaintiff's Efforts to Exhaust Administrative Remedies for His Claims Against the JBCC Defendants

Plaintiff alleges that the JBCC Defendants in various ways acted improperly toward him as unlawful retaliation for filing a lawsuit and as part of an effort to dissuade Plaintiff from pursuing his legal remedies. *See* Am. Compl. at 2-6. Specifically, Plaintiff claims that he was deliberately misinformed of the grievance process, was deprived of his personal property, and had his legal mail delayed. *Id.* at 2, 5-6. He further asserts that he was subject to a retaliatory transfer when he was moved in May 2011 from JBCC to JDCC. *See id.* at 2-6.

The JBCC Defendants argue that Plaintiff failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a) because he "did not file any grievances concerning a transfer, retaliation, or loss of property." JBCC Defs.' Mot. at 2, 5-6. In support of this contention, the JBCC Defendants have supplied an affidavit from an ODOC Administrative Programs Officer attesting to the lack of any relevant Grievance.[6] *See* JBCC Defs.' Mot. Ex. 2, Kerry Minyard Aff. of Apr. 3, 2013, Doc. No. 173-2.

---

[6] The JBCC Defendants also cite an affidavit of Defendant Moham as support for this proposition. *See* JBCC Defs.' Mot. at 6 (citing S.R. Attach. 4-a, Moham Aff. of Jan. 26, 2011, Doc. No. 21-11). Because this affidavit predates the May 2011 transfer of Mr.

The JBCC Defendants' assertion is contradicted by Plaintiff's submission of a Grievance marked file-stamped by JBCC on June 6, 2011 and supporting affidavit. *See* Pl.'s Resp. to JBCC Defs.' Mot. Ex. 2, Doc. No. 177-2 ("Grievance 7/11-009"); Pl.'s Resp. to JBCC Defs.' Mot., Adams Aff. of Aug. 23, 2013, Doc. No. 177. In this Grievance, addressed to Defendant Watts, Plaintiff complained that after he was transferred to JDCC, a radio that belonged to him was returned disassembled, which he felt "was an attempt by Deputy Moham to intimidate me in my legal process seeing I am naming him and CHSA [Barbara] Carswell as defendants in my civil suit." *See* Grievance 7/11-009.

This Grievance alone, however, does not reasonably support an inference that Plaintiff properly *completed* the entire ODOC Grievance Process, as laid out above, with respect to Grievance 7/11-009. Plaintiff does not contend, in argument, pleading, or affidavit, that he took action on this Grievance after its initial submission.

Instead, Plaintiff argues that "Ms. Watts failed to answer the issues presented to her, [thereby] failing to allow the plaintiff to secure adequate opportunity to grieve." Pl.'s Resp. to JBCC Defs.' Mot. at 2. This argument fails. First, Plaintiff's statement is contrary to the evidentiary material before the Court. Plaintiff himself submits a June 6, 2011 letter from Defendant Watts to Plaintiff, which states that Grievance 7/11-009 was being returned because Plaintiff had failed to attach the underlying Request to Staff. Pl.'s Resp. to JBCC Defs.' Mot. Ex. 1, Doc. No. 177-1. Plaintiff does not contend, much less

_____

Adams to JDCC – a significant event alleged in support of his retaliation claim – the affidavit does not, standing alone, establish the JBCC Defendants' affirmative defense of nonexhaustion.

demonstrate through evidentiary material, that he attempted to resubmit the returned Grievance 7/11-009 as permitted by the ODOC Grievance Process. *See* ODOC Grievance Process at ¶ V(A)(7) ("If the offender does not follow instructions as explained in this procedure and on the grievance forms, the grievance may be returned unanswered for proper completion. If allowed, the offender must properly re-submit the grievance within ten calendar days of receipt."). Further, even if (contrary to the June 6, 2011 letter) the Court accepted as true that Plaintiff received no response at all to Grievance 7/11-009, the ODOC Grievance Process provided Plaintiff a remedy for that scenario. *See* ODOC Grievance Process at ¶ V(C)(4) (providing that if there has been no response to a Grievance within 30 days of its submission, a prisoner may file a Grievance with the ARA or CMO on the ground of non-responsiveness). However, Plaintiff again offers no evidentiary material indicating he pursued this avenue to continue seeking resolution of his complaint.[7]

Finally, Plaintiff argues that Defendant Watts was required to recuse from hearing his grievances because she was an employee directly involved in the events about which he was complaining. Pl.'s Resp. to JBCC Defs.' Mot. at 3-4 (citing ODOC Grievance

_____

[7] Plaintiff additionally argues that he was prevented from complying with the PLRA exhaustion requirements because the JDCC Warden once told Plaintiff "he could not talk to the plaintiff about the issue due to it being in the course of litigation." Pl.'s Resp. to JBCC Defs.' Mot. at 2-3; *see also* ODOC Grievance Process at ¶ II(B)(2). Notwithstanding the inadmissible nature of this hearsay statement on summary judgment, *see* Fed. R. Civ. P. 56(c)(2), there is no support for the suggestion that Plaintiff was deterred or prevented from resubmitting Grievance 7/11-009 or grieving his other complaints. Specifically, Plaintiff provides no evidentiary support for the suggestion that anyone actually stopped him from submitting (or resubmitting) any Request to Staff, Grievance, or Grievance Appeal regarding the allegedly retaliatory acts of the JBCC Defendants.

Process at ¶ III(E), which prevents a "directly involved" employee from determining the "final resolution" of the offender's formal complaint). While not a frivolous point, whether Defendant Watts ultimately would have had to recuse herself from hearing Plaintiff's grievances is immaterial because Plaintiff did not pursue any Grievance far enough to require recusal. Regarding many of the allegedly retaliatory acts of the JBCC Defendants, Plaintiff did not file a Grievance at all. Regarding the disassembly of his radio, and any broader allegations of retaliation that could be read into Grievance 7/11-009, ODOC policy required Plaintiff to correct the procedural deficiency of his Grievance to obtain a decision on the merits, and Plaintiff failed to do so. Therefore, in neither instance was there ever a "final resolution" with the potential to require Defendant Watts' recusal.

Although a pro se litigant's pleadings are liberally construed and "held to a less stringent standard" than those drafted by attorneys, *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991), this does not relieve Plaintiff from carrying his burden in opposing a motion for summary judgment. Having reviewed both parties' submissions, Plaintiff's averments and supporting documents are insufficient to "demonstrate with specificity the existence of a disputed material fact." *Hutchinson*, 105 F.3d at 564. An inmate who starts the administrative process but fails to complete it has not properly exhausted administrative remedies. *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002). The undisputed material facts show that Plaintiff did not properly submit a Grievance relating to his allegations against the JBCC Defendants and – even if he had – he did not submit a Grievance Appeal to the ARA or the CMO as required to complete the ODOC

Grievance Process.  *See Jackson v. Workman*, 391 F. App'x 724, 725 (10th Cir. 2010) (holding that plaintiff failed to exhaust administrative remedies when he had not filed administrative appeal).[8]

None of the evidence in the record, even when construed in favor of Plaintiff as the nonmoving party, creates a genuine question of fact that would prevent the conclusion that Plaintiff did *not* exhaust his administrative remedies prior to commencing his claims against the JBCC Defendants.  Accordingly, the undersigned finds that the JBCC Defendants' affirmative defense of nonexhaustion of administrative remedies is established as a matter of law, and, therefore, summary judgment should be entered in favor of the JBCC Defendants on Plaintiff's claims against them.[9]

### D. The Sufficiency of Plaintiff's Efforts to Exhaust Administrative Remedies for His Claims Against the Medical Staff Defendants

The Medical Staff Defendants argue that Plaintiff failed to exhaust his administrative remedies on his claims relating to medical treatment because the two medical grievances he submitted, one in 2010 and the other in 2011, were deficient. Med. Staff Defs.' Mot. at 2, 5.  For this proposition, the Medical Staff Defendants cite: (1) Special Report Attachment 4-b, which consists of an affidavit of an ODOC Nurse Manager and an assortment of correspondence related to Plaintiff's 2010 medical grievances (S.R. Attach. 4-b, Doc. No. 21-12); and (2) Exhibit 2 to their Motion, which

---

[8] Unpublished decisions are cited herein for their persuasive value pursuant to 10th Cir. R. 32.1(A).

[9] In light of this recommendation, the undersigned need not address the JBCC Defendants' alternative arguments in support of summary judgment.

consists of an affidavit of an ODOC Nurse Manager and an assortment of correspondence related to Plaintiff's 2011-2013 medical grievances (Med. Staff Defs.' Mot. Ex. 2, Doc. No. 172-2).

The Special Report and other documents in the record show that:

- On June 9, 2010, Plaintiff submitted a Grievance concerning his medical care to ODOC Director Justin Jones (*see* S.R. Attach. 4-b, Doc. No. 21-12, at 12-13);

- On that same date, Plaintiff submitted a substantially-identical Grievance concerning his medical care to ODOC CMO Sutmiller (*see id*. at 7-11);

- On June 18, 2010, Plaintiff – upon being advised that the June 9, 2010 Grievance to Director Jones had been returned for being untimely filed – submitted a Request to Submit a Misconduct/Grievance Appeal Out of Time to Director Jones (*see id*. at 3-6); and

- On January 4, 2012, Plaintiff submitted a Grievance Appeal complaining that non-defendant Stephen Gragg at JDCC had failed to respond to two Requests to Staff concerning Plaintiff's medical care (*see* Med. Staff Defs.' Mot. Ex. 2, Doc. No. 172-2, at 2-5).

Of these various grievance "trails," only the Request to Submit a Misconduct/Grievance Appeal Out of Time need be analyzed, as its procedural history negates summary judgment for the Medical Staff Defendants on the ground of nonexhaustion. The pertinent undisputed facts are that the June 9, 2010 Grievance that Plaintiff submitted to Director Jones was returned to him on June 11, 2010, along with a

13

cover letter citing several deficiencies, including that Plaintiff's submission was "out of time from date of incident." Pl.'s Resp. to Med. Staff Defs.' Mot. Ex. 9, Doc. No. 174-7. Plaintiff then mailed a June 18, 2010 Request to Submit a Misconduct/Grievance Appeal Out of Time to Director Jones. S.R. Attach. 4-b, Doc. No. 21-12, at 3-6. This June 18, 2010 Request expressly referred to the returned June 9, 2010 Grievance. *Id*. at 4. On June 30, 2010, Medical Services Administrator Genese McCoy wrote Plaintiff regarding his June 18, 2010 Request, stating:

> According to OP-090124, in part, an offender may submit a "Request to Submit a Misconduct/Grievance Appeal Out of Time" to the **director only** . . . .
>
> Apparently, your request form was inadvertently sent to my office. Consequently, I have returned your original correspondence to the director's designee, in the administrative reviewing authority's office.

*Id*. at 3.

In other words, and as supported by the cited documents, Plaintiff submitted a Request to Submit a Misconduct/Grievance Appeal Out of Time to Director Jones as required by the ODOC Grievance Process, but someone at ODOC had redirected the Request to Ms. McCoy, who upon realizing the error stated to Plaintiff that she would send it back to Director Jones. *Id*. at 3, 6 (showing name and address of envelope addressee Director Jones crossed out and "Medical Services" written in). Ms. McCoy did not indicate that any further action on Plaintiff's part was necessary. *Id*. at 3. Plaintiff contends, and the Medical Staff Defendants do not dispute, that Plaintiff never subsequently received any disposition of or instruction on his Request. The ODOC Grievance Process provided Plaintiff no remedy or direction for when a request to submit

a grievance out of time went unanswered. *See* ODOC Grievance Process at ¶ XII (providing no recourse for unanswered Request to Submit a Misconduct/Grievance Appeal Out of Time); *cf.* ODOC Grievance Process at ¶¶ IV(B)(7), V(C)(4) (providing recourse if a Request to Staff or Grievance goes unanswered for 30 days).

The Tenth Circuit has explained that when an inmate attempts to comply with the ODOC Offender Grievance Process but prison officials prevent him or her from completing that process, the inmate's claim should not be dismissed for failure to exhaust.

> We have previously noted that the PLRA only requires the exhaustion of "available" administrative remedies. In fact, we have stated that district courts are obligated to ensure that any defects in exhaustion were not procured from the action or inaction of prison officials before dismissing a claim for failure to exhaust. Where prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy, they render that remedy "unavailable" and a court will excuse the prisoner's failure to exhaust.

*Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010) (citations and internal quotation marks omitted); *see also Tuckel v. Grover,* 660 F.3d 1249, 1252 (10th Cir. 2011).

Here, in view of the ODOC's failure to respond to a request to submit a grievance appeal out of time, and the lack of any recourse available to Plaintiff upon that failure to respond, the undersigned concludes that Plaintiff attempted to comply with his obligations under the ODOC Grievance Process and the ODOC's actions excused Plaintiff's failure to exhaust his administrative remedies. The Medical Staff Defendants

have not shown they are entitled to summary judgment on their affirmative defense of failure to exhaust administrative remedies.[10]

## II. Whether the Medical Staff Defendants Are Entitled to Summary Judgment on the Merits of Plaintiff's Eighth Amendment Claim

Plaintiff alleges that the Medical Staff Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by denying him medical care and delaying the care that was provided. Am. Compl. at 2, 4-6. The undersigned finds that Plaintiff has failed to come forward with evidentiary material that is sufficient to permit a rational trier of fact to conclude that the Medical Staff Defendants unconstitutionally denied or delayed adequate medical care to Plaintiff.

### A. Standard: Deliberate Indifference

To prevail on an Eighth Amendment claim under 42 U.S.C. § 1983, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Farmer v. Brennan*, 511 U.S. 825, 834-37 (1994). In *Mata v. Saiz*, 427 F.3d 745 (10th Cir. 2005),

---

[10] The undersigned notes that Plaintiff's June 18, 2010 Request to Submit a Misconduct/Grievance Appeal Out of Time quite possibly may have been deficient for failure to comply with ODOC Grievance Process ¶ XII(A). But the Medical Staff Defendants do not make that argument, and the undersigned declines to do so for them. *See Celotex*, 477 U.S. at 322-23 (holding that party seeking summary judgment has the burden to show that the undisputed material facts require judgment as a matter of law in its favor). Indeed, both defendant groups, in their respective motions for summary judgment, offer only meager descriptions of the facts and analyses of the law regarding exhaustion of remedies. *See* Med. Staff Defs.' Mot. at 5-6; JBCC Defs.' Mot. at 5-6. In lieu of explaining Plaintiff's multiple grievances, the defendant groups rely on conclusory statements and non-specific citations to multipage exhibits, leaving the task of deciphering those documents to the Court. *Id.* This alone would permit denial of Defendants' motions for summary judgment insofar as the affirmative defense of nonexhaustion.

the Tenth Circuit Court of Appeals provided a thorough summary of the law applicable to such claims:

> A prison official's deliberate indifference to an inmate's serious medical needs is a violation of the Eighth Amendment's prohibition against cruel and unusual punishment. The test for constitutional liability of prison officials "involves both an objective and a subjective component."
>
> The prisoner must first produce objective evidence that the deprivation at issue was in fact "sufficiently serious." We have said that a "medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Where the necessity for treatment would not be obvious to a lay person, the medical judgment of the physician, even if grossly negligent, is not subject to second-guessing in the guise of an Eighth Amendment claim. Moreover, a delay in medical care "only constitutes an Eighth Amendment violation where the plaintiff can show the delay resulted in substantial harm." The substantial harm requirement "may be satisfied by lifelong handicap, permanent loss, or considerable pain."
>
> The subjective prong of the deliberate indifference test requires the plaintiff to present evidence of the prison official's culpable state of mind. The subjective component is satisfied if the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [s]he must also draw the inference." A prison medical professional who serves "solely . . . as a gatekeeper for other medical personnel capable of treating the condition" may be held liable under the deliberate indifference standard if she "delays or refuses to fulfill that gatekeeper role."

*Id.* at 751 (alteration in original) (citations omitted).

*B. Background*

Plaintiff's medical claims generally are related to injuries to his left foot, ankle, and/or knee that have occurred while he has been in ODOC's custody and for which he

first requested treatment in 1997, when he broke his left heel or ankle.[11] *See* Am. Compl. at 2, 5-6; Med. Staff Defs.' Mot. at 2. While Plaintiff has received ongoing treatment since 1997, the Medical Staff Defendants' unlawful acts and failures to act are alleged to have begun in 2009. *See* Am. Compl. at 2, 4, 5-6.

Plaintiff has been in ODOC custody since January 3, 1997. S.R. Attach. 1-a, Doc. No. 21-1, at 3. Defendant Don Sutmiller has been the Chief Medical Officer (or "CMO") for ODOC since October 29, 2008. S.R. Attach. 5, Doc. No. 21-13. On or about January 22, 2009, Plaintiff was transferred to Jackie Brannon Correctional Center ("JBCC") in McAlester, Oklahoma. S.R. Attach. 1-d, Doc. No. 21-4, at 2. Defendant Barbara Carswell is the Correctional Health Services Administrator (or "CHSA") at JBCC. Pl.'s Resp. to Med. Staff Defs.' Mot. Ex. 1, Doc. No. 174-1.

On September 4, 2009, Plaintiff was seen by JBCC's medical staff for complaints of pain in his left ankle. S.R. Attach. 2-a, Doc. No. 21-6, at 6. The medical personnel's progress notes from that date note that Plaintiff reported: "Fractured L ankle 1997. Beginning to have pain in the ankle. Active in sports." *Id*. The consulting medical official ordered an x-ray of Plaintiff's left ankle at the hospital to get "some good pictures." *Id*. Progress notes from Plaintiff's September 9, 2009 visit to the prison medical facility indicate that the x-rays had been or were to be reviewed by a doctor and showed a healed heel bone fracture with mild deformity and a posterior soft tissue sprain

---

[11] Based upon the Special Report, the Amended Complaint, and the evidentiary material attached to the motions and responses filed herein, all material facts cited in this Report and Recommendation are uncontroverted, deemed admitted, or, where disputed, viewed in the light most favorable to Plaintiff. Immaterial facts not properly supported by the record are omitted.

with possible or partial fragmentation of the bone. *Id*. at 8. On September 17, 2009, Plaintiff had a post-x-ray followup. The doctor noted that "[t]he fragment of bone is probably acting as a foreign body setting up an inflammatory response" and prescribed 800 mg of ibuprofen three times a day for six months.[12] *Id*.

On December 15, 2009, Plaintiff stated that his foot had not improved after taking the ibuprofen. *Id.* at 9. The progress notes show that Plaintiff reported severe pain and intermittent swelling. *Id*. Plaintiff was prescribed a daily dose of prednisone, and an orthopedic or podiatry consult was included in the medical orders. *Id*. at 9-10. Plaintiff returned to the clinic for a follow-up visit with a doctor on December 29, 2009. The notes state: "Feels some better after taking prednisone- lots better than has been. Better. Still needs consult. Check with me one week. Marked im[p]rovement." *Id*. at 9. On that date, the doctor again prescribed ibuprofen (at the same dosage and duration) and ordered that Plaintiff should return in 30 days. S.R. Attach. 2-a, at 10. The written orders for Plaintiff's visit on January 29, 2010, indicate that his follow-up appointment with the doctor was "[r]escheduled until consult is completed." *Id*. at 11.

Plaintiff was next seen on May 28, 2010, by CHSA Defendant Carswell. S.R. Attach. 2-b, Doc. No. 21-7, at 9-11. Plaintiff's chief complaint was that a tractor tire had rolled over and pinned his left foot on that date, and he reported a sharp, constant pain, mostly in his calf. *Id*. Plaintiff was instructed to ice and to elevate his left leg and to use crutches if needed. *Id*. at 10. Plaintiff was placed on restriction from work duty, with

---

[12] The undersigned has relied upon *Stedman's Medical Dictionary* (28th ed. 2006) in analyzing the abbreviations and terminology in Plaintiff's medical records.

bedrest, crutches, meals delivered to him in bed, and an ice pack, for three days. *Id*. at

11. Dr. Phillip Washburn, a doctor at JBCC, cosigned Plaintiff's electronic health record

from that date along with Defendant Carswell. *Id*. at 10. Plaintiff returned to the medical

unit on June 4, 2010, when he was examined by a nurse and by Dr. Washburn. On that

date, Plaintiff complained that when he jumped back from the tractor tire, he

hyperextended his left ankle and had pain and spasms in his left calf muscle. *Id*. at 8.

Plaintiff reported that after his May 28th visit, he had lain in and used ibuprofen and ice

packs. *Id*. Dr. Washburn observed mild hyperextension of Plaintiff's left foot and "[l]eft

plantaris tendon rupture." *Id*. Dr. Washburn ordered Plaintiff to continue with the

ibuprofen, to return to work in a sitting capacity only, and to return to the clinic in 10

days. *Id*.

Plaintiff did return on June 17, 2010, and Dr. Washburn noted that the pain and

swelling of the left calf was resolving and that Plaintiff could continue with light duty.

*Id*. at 6. Dr. Washburn also noted that Plaintiff "needs either an ortho or podiatry

consult" regarding Plaintiff's chronic left heel pain from the 1997 fracture. *Id*. On July

8, 2010, Plaintiff reported to Dr. Washburn that he had weakness and severe chronic pain

in his left heel and ankle that was getting worse. *Id*. at 5. Dr. Washburn reviewed x-rays

or an x-ray report of Plaintiff's ankle and noted: "I think it's time for an orthopedist to

evaluate this." *Id*.

On that same date, July 8, 2010, Defendant Sutmiller approved an outside referral

for Plaintiff to have an appointment at the OU Medical Center ("OUMC"). S.R. Attach.

2-c, Doc. No. 21-8, at 4. Plaintiff was originally scheduled for an orthopedic consultation

on July 19, 2010, and this appointment was rescheduled to July 26, 2010 "per OUMC." *Id*. On July 26, 2010, Plaintiff was evaluated at OUMC by Dr. Sheila Algan, MD[13] for his chronic left heel/ankle pain. *Id*. at 2. Dr. Algan recommended no outpatient care, and she diagnosed Plaintiff with arthritis status / post Plaintiff's ankle fracture 13 years ago. *Id*. at 3. No further tests or procedures were ordered. *Id*.

In May 2011, Plaintiff was transferred to Jess Dunn Correctional Center ("JDCC") in Taft, Oklahoma. JBCC Defs.' Mot. Ex. 4, Doc. 173-4, at 1; Pl.'s Mot. for Leave to Supp. Compl., Doc. No. 42. Plaintiff alleges that at JDCC he saw someone known only as "Dr. Eddie," "who told Plaintiff that no doctor in his right mind would rebreak the injury to attempt to correct it." Am. Compl. at 6. Plaintiff also alleges that his knee was hurt as a result of a weak ankle in July 2011. *Id*.

   *C. Discussion*

Plaintiff does not dispute that he has received various forms of treatment, but he contends that he should have received an MRI, support brace, or other treatment instead of or in addition to what he was given. Plaintiff argues that Defendant Sutmiller is liable because ODOC, through Defendant Sutmiller, authorized only an "evaluation" of Plaintiff's condition by OUMC and did not provide adequate treatment, such as a support brace or rehabilitation. *Id*. at 2, 5. Plaintiff asserts that Defendant Carswell, who examined Plaintiff on her own and with Dr. Washburn, told Plaintiff he could purchase

---

[13] Dr. Algan is a board certified orthopedic surgeon with OU Physicians and a clinical assistant professor of sports medicine at the University of Oklahoma College of Medicine. *See* https://www.oumedicine.com/department-of-orthopedic-surgery-and-rehabilitation/general-program-info/faculty/sheila-m-algan-md (last visited Dec. 9, 2013).

orthopedic shoes, failed to provide necessary treatment, and refused to order an MRI and pain medication. *Id.* at 2, 4-6.

The evidentiary material submitted by the parties, even when viewed most favorably to Plaintiff, forecloses the existence of a genuine issue of material fact on whether the Medical Staff Defendants were deliberately indifferent to Plaintiff's medical needs. The undisputed facts outlined above reflect that Plaintiff: repeatedly was seen by prison medical staff; obtained x-rays; and received prednisone, ibuprofen, crutches, bed rest, and work restriction for alleviation of his symptoms and pain. S.R. Attachs. 2-a, 2-b. Further, Plaintiff was referred to and examined by an outside orthopedic specialist, who diagnosed arthritis and neither ordered nor recommended any further treatment. S.R. Attach. 2-c.

The Tenth Circuit Court of Appeals upheld the rejection of an Eighth Amendment claim under similar circumstances in *Duffield v. Jackson*, 545 F.3d 1234 (10th Cir. 2008). In *Duffield*, the plaintiff-inmate complained of hip and lower back pain as well as an ear infection. Prison medical staff provided multiple examinations, prescribed medication, and performed x-rays; the plaintiff also had a consultation with an outside ear specialist. *Id.* at 1236, 1238-39. Despite the treatment, the plaintiff alleged that he still suffered pain and that prison officials had exhibited deliberate indifference by failing to provide him necessary treatment and medication, including by delaying sending him to the ear specialist and not sending him to a specialist for his hip and back. *Id.* at 1236, 1239. The federal district court granted summary judgment for certain defendants based on the absence of deliberate indifference. *See id.* at 1237. The Tenth Circuit reviewed under a

plain error standard and affirmed, rejecting the plaintiff's contentions regarding if and when he was entitled to see an outside specialist:

> The decision that a patient's condition requires a specialist is a decision about the patient's course of treatment, and "negligent diagnosis or treatment of a medical condition do[es] not constitute a medical wrong under the Eighth Amendment." We cannot say that the magistrate judge committed plain error in finding that the [prison's] failure to consult more with outside specialists did not amount to deliberate indifference.

*Id.* at 1239 (citation omitted).

Here, the Medical Staff Defendants likewise have presented "ample undisputed evidence of medical attention" given to Plaintiff, including repeated examinations, prescription medication, x-rays, and special living conditions. *See id.* at 1238; S.R. Attachs. 2-a, 2-b. Plaintiff additionally received treatment from an outside specialist at OUMC. S.R. Attach. 2-c. Although this consultation occurred about seven months after prison medical staff first recommended it, *see* S.R. Attachs. 2-a and 2-b, the delay was not unreasonable. After the recommendation was first made in December 2009, Plaintiff reported to staff that he was improving. S.R. Attach. 2-a. Then, when Plaintiff returned with complaints in June and July 2010, Dr. Washburn renewed the recommendation for an orthopedic or podiatry consultation on June 17 and July 8, 2010. S.R. Attach. 2-b. The consultation occurred within the month, on July 26, 2010. S.R. Attach. 2-c.

Further, the specialist's opinion that Plaintiff needed no additional or follow-up treatment forecloses a reasonable inference that any delay in this referral resulted in "substantial harm" sufficient to support an Eighth Amendment claim. *See Mata*, 427 F.3d at 751. Plaintiff's insistence on the need for further treatment—although the

specialist, Dr. Algan, recommended none—reflects only a difference of opinion. Plaintiff presents no evidentiary material from which a reasonable fact finder could conclude that Defendant Sutmiller or Defendant Carswell restricted or dictated the course of treatment recommended by Dr. Algan. The Medical Staff Defendants' failure to provide Plaintiff the additional medical procedures and treatment he desired, none of which were recommended by Dr. Algan or any other medical personnel, does not constitute ignoring or being deliberately indifferent to Plaintiff. "[T]he question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment." *Estelle*, 429 U.S. at 107; *Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir. 1992) ("Plaintiff's belief that he needed additional medication, other than that prescribed by the treating physician, as well as his contention that he was denied treatment by a specialist [are] . . . insufficient to establish a constitutional violation.").

Given the recommendation of Dr. Algan that Plaintiff did not need these additional procedures and treatment, it is doubtful that Plaintiff could establish even negligence by the Medical Staff Defendants. He certainly cannot establish an Eighth Amendment violation in light of that recommendation as well as the care and treatment afforded to him and the lack of any credible evidence of a culpable state of mind on the part of Defendant Sutmiller or Defendant Carswell. *See Mata*, 427 F.3d at 751. Mere negligence, or even gross negligence, in diagnosis or treatment does not rise to the level of an Eighth Amendment violation. *Estelle*, 429 U.S. at 106 ("Medical malpractice does

not become a constitutional violation merely because the victim is a prisoner."). "Where the necessity for treatment would not be obvious to a lay person, the medical judgment of the physician, even if grossly negligent, is not subject to second-guessing in the guise of an Eighth Amendment claim." *Mata*, 427 F.3d at 751; *see also Wilson v. Seiter*, 501 U.S. 294, 298 (1991) ("[O]nly those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." (citation and internal quotation marks omitted)).[14]

The undisputed facts, as established through the evidentiary material submitted by the parties, demonstrate that the Medical Staff Defendants did not violate Plaintiff's Eighth Amendment rights. Plaintiff has not presented evidentiary material sufficient to create a question of fact on any scenario that would permit a reasonable finding to the contrary. Therefore, summary judgment should be granted for Defendants Sutmiller and Carswell on these claims.[15]

---

[14] Given the recommendation that summary judgment be granted in favor of the Medical Staff Defendants on the entirety of Plaintiff's claims, the undersigned need not discuss other deficiencies in those claims. However, one issue worth mentioning is that Plaintiff's claims could be construed as alleging that Defendant Sutmiller and Defendant Carswell are responsible for acts or deprivations occurring prior to any involvement by them in Plaintiff's medical care. Individual liability under Section 1983 "must be based on personal involvement in the alleged constitutional violation," and there must be an "'affirmative link' between each defendant and the constitutional deprivation." *Duffield*, 545 F.3d at 1238 (internal quotation marks omitted). There is no reasonable inference that Defendant Sutmiller was involved in Plaintiff's medical care prior to October 17, 2008 (the date Sutmiller started as CMO for ODOC) or that Defendant Carswell was involved prior to January 23, 2009 (the date Plaintiff was transferred to JBCC, where Carswell was the CHSA).

[15] In light of this recommendation, the undersigned need not address the Medical Staff Defendants' alternative argument that they are entitled summary judgment on the basis of qualified immunity.

### III. Whether Defendant Sutmiller Is Entitled to Summary Judgment on Plaintiff's Due Process Claim

Closely intertwined with the Eighth Amendment claim is Plaintiff's claim that Defendant Sutmiller violated Plaintiff's Fourteenth Amendment due process rights by his refusal "to provide the necessary care needed." Am. Compl. at 5. Plaintiff alleges that he has suffered a deprivation of liberty due to Defendant Sutmiller's inadequate care of Plaintiff's foot and ankle injuries. *Id*. at 5-6. Plaintiff in his Amended Complaint asserts that Defendant Sutmiller refused to treat Plaintiff even though he supervised the ODOC's medical operations and enjoyed the authority to provide medical care. *Id*. at 2.

Lawfully incarcerated persons retain "only a 'narrow range of protected liberty interests.'" *Abbott v. McCotter*, 13 F.3d 1439, 1442 (10th Cir. 1994) (quoting *Hewitt v. Helms*, 459 U.S. 460, 467 (1983), *overruled in part on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995)). "The Due Process Clause standing alone confers no liberty interest in freedom from state action taken within the sentence imposed." *Sandin*, 515 U.S. at 480 (internal quotation marks omitted). In *Sandin*, the Supreme Court held that the touchstone of the inquiry into whether a protected liberty interest exists is whether the conditions "impose[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484.

As set forth in the analysis of Plaintiff's Eighth Amendment claim, Plaintiff has failed to show a genuine issue of material fact with respect to any "significant" or "atypical" hardship as a result of Defendant Sutmiller's alleged conduct. Assuming that Defendant Sutmiller was responsible for and personally participated in Plaintiff's medical

care during the relevant time frame, in addition to the medical care Plaintiff received at the prison facility, Defendant Sutmiller approved Plaintiff's referral to an orthopedic specialist, Dr. Algan, for treatment. S.R. Attach. 2-c. Defendant Sutmiller did not exercise control over the assessment of Plaintiff made by Dr. Algan. Dr. Algan did not prescribe any additional procedures or treatment for Plaintiff. S.R. Attach. 2-c; *see* Pl.'s Resp. to Med. Staff Defs.' Mot. at 7.

Due process requires only "such procedural protections as the particular situation demands." *Morrisey v. Brewer*, 408 U.S. 471, 481 (1972). Even if Defendant Sutmiller did refuse to order additional tests or treatment, such action cannot reasonably constitute a due process violation when the record does not support an inference that such treatment or tests were called for. Plaintiff broadly claims that state laws and prison policies were not followed but does not identify any such laws or policies. *See* Am. Compl. at 5. Instead, Plaintiff generally restates his Eighth Amendment claim that Defendant Sutmiller provided inadequate treatment. *Id.* at 5-6. This is insufficient to allow a reasonable jury to find in Plaintiff's favor. *See* Fed. R. Civ. P. 56(c)(1); *Garrison*, 428 F.3d at 935.

The fact that Plaintiff did not receive the additional medical care he desired is not an "atypical and significant hardship," such as would constitute an infringement upon a constitutionally protected interest. *See, e.g.*, *Rainey v. Boyd*, No. 12-cv-00564-CMA-MEH, 2012 WL 3778356, at *13-14 (D. Colo. Aug. 15, 2012) (recommending dismissal of prisoner's due process claim based upon Eighth Amendment claim that itself was

subject to dismissal), *adopted*, 2012 WL 3778351 (D. Colo. Aug. 31, 2012). Summary judgment should be granted in favor of Defendant Sutmiller on this claim.

## IV. Plaintiff's Fed. R. Civ. P. 12(c) Motion for Judgment on the Pleadings

Plaintiff previously moved for and was denied summary judgment. *See* Order, Doc. No. 162. When Plaintiff sought leave to file a second motion for summary judgment, the Court denied the request because in this district parties are by rule limited to one motion for summary judgment. *See* Order, Doc. No. 165; LCvR 56.1(a). Subsequently, Plaintiff filed various motions purportedly seeking judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* Doc. Nos. 175, 176, 178, and 179.

As a threshold matter, Plaintiff in these filings repeatedly argues that Defendants lack evidence to refute the facts alleged in Plaintiff's Amended Complaint. *Id*. This is an argument for summary judgment, not one for judgment on the pleadings, *see* Fed. R. Civ. P. 12(d), and as such violates Local Civil Rule 56.1(a) and the Court's prior Order denying Plaintiff's request to file a successive motion for summary judgment.

Regardless, Plaintiff's motion should be denied on the merits. Plaintiff merely restates the arguments that were considered in the undersigned's analysis of Defendants' motions for summary judgment, as detailed in this Report and Recommendation. Because Plaintiff offers no basis for judgment in his favor that has not been fully considered and rejected, Plaintiff's motion—whether construed as a motion for summary judgment or a motion for judgment on the pleadings—should be denied.

## RECOMMENDATION

For the foregoing reasons, the undersigned recommends that Defendants' motions for summary judgment (Doc. Nos. 172, 173) be GRANTED. The undersigned further recommends that Plaintiff's motion for judgment on the pleadings (Doc. Nos. 175, 176, 178, 179) be DENIED.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file an objection to the Report and Recommendation with the Clerk of this Court by the 17th day of January, 2014, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72. The parties are further advised that failure to timely object to this Report and Recommendation would waive the right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation terminates the referral in the present case.

ENTERED this 27th day of December, 2013.

_____
CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE